I concur in the statement of law applying to the instant case, but am constrained to dissent from the finding of fact and the determination that plaintiff is not entitled to the relief sought by her and awarded by the Hudson County Court, on affirmance of the determination and award of the Compensation Bureau.
The opinion of a majority of this court seems to rest upon a finding that the alleged unusual strain or exertion occurred more than a half hour prior to the attack which produced the death.
There was some difference of opinion between the medical experts as to the length of time following unusual strain or exertion that a heart attack, such as decedent suffered, could be attributed to such strain or exertion. The consensus was that twenty to thirty minutes was the maximum time limit. Assuming this to be the limit the proofs in this case, in my opinion, still require a finding that decedent's attack occurred within such time from the exercise by him of unusual strain and exertion.
The appellant's medical witnesses base their conclusion largely on the lapse of half an hour or so between what they take to be the last effort and the myocardial infarction.
The uncontradicted testimony of witness Spencer is that he and decedent "left the garage about 20 minutes or a quarter to 8 that morning"; "that it took about 20 minutes or so, and we got hooked up"; that the usual period of time for hooking up on a day where there is no snow and no extremely cold weather, he said, "Figure 5 to 10 minutes, at the most". In answer to a question as to "How long, on a normal day without snow on the road, would it take to leave the yard on Montgomery Street, go over to Newark Avenue to Henderson, and then proceed along Henderson to the entrance of the tunnel and then go through the tunnel to New York with the same kind of trailer and tractor?" he answered, "On a regular day it takes you ten to fifteen minutes." He was then asked: "Q. And on the day in question how long would it take? A. It takes you — by the time you get to the hole and get the ticket — about a half hour." *Page 154 
Spencer also described the road conditions, as follows: "The road conditions wasn't any too good because after the first snowstorm you have to expect some difficulty one way or the other." The testimony was that there was a snow fall of approximately 2.8 inches during the night preceding the incident in question and that the roads were generally covered by it.
The opinion of the medical witnesses of plaintiff was that decedent had a myocardial infarction due to unusual strain and exertion. One medical witness was asked on cross-examination, as follows: "Q. Consider, Doctor, that death occurred more than twenty-minutes after the man did anything whatsoever in the way of exertion. A. Well, as the facts are here, he was driving a truck through heavy traffic after a snow storm, which is itself exertion. Q. What exertion do you consider that? A. Well, it could be quite severe if traffic was heavy or if it was slippery. I don't know how much exertion. It has not been brought out. But as the facts are stated here, the man began to complain, began to feel badly within twenty minutes or half an hour after he left the lot and after he engaged in the last physical exertion. As I say, driving a truck is certainly my idea of continued exertion". "Q. And as far as the time element goes, if he had stayed at home that morning, it would have happened at almost exactly the same time? A. That I wouldn't say. I don't think so. I don't think so at all. I think that the exertion definitely was the precipitating factor. If he had stayed at home, he might have lived for many years."
I am of the opinion that the proofs support the finding of the Bureau and the County Court that the labor and strain to which decedent was subjected on the morning in question was unusual, and not that ordinarily exerted by a truck driver in the usual course of his work. This was a 7 1/2 ton truck, carrying approximately 15 tons of paper. The snow imposed hard and unusual exertion on decedent in order to attach the trailer to his tractor. This exertion did not cease when he started from the parking lot, but the driving on the snow covered streets continued the exertion, which finally resulted in the myocardial infarction, which would not have occurred without the continued *Page 155 
unusual exertion and strain imposed upon him by the extraordinary weather conditions at that time.
It is my opinion that the judgment under review should be affirmed.